**Catherine E. GARNEAU et al.**

v.

**RAYTHEON COMPANY et al.**
**Civ. A. No. 70-353-C.**

United States District Court,
D. Massachusetts.
April 27, 1972.

Joseph D. Steinfield, Rya W. Featherston, Hill & Barlow, Boston, Mass., for Garneau.

Jack R. Pirozzolo, Harold M. Willcox, Herrick, Smith, Donald, Farley & Ketchum, Boston, Mass., for Raytheon Co.

Walter H. Mayo, III, Asst. Atty. Gen., Boston, Mass., for Com. of Mass.

## OPINION

CAFFREY, Chief Judge.

This matter came before the court on defendant Raytheon's motion to determine plaintiffs' entitlement to money damages and other affirmative relief under Count 2 of the complaint. Evidentiary hearings were held at which testimony was received from plaintiff Catherine E. Garneau, from Robert Hannemuth, vice-president for industrial relations of defendant Raytheon, and from Everett L. Grady, Director, Division of Industrial Safety, Commonwealth of Massachusetts.

Plaintiffs' claim for money damages on Count 2 is based on 42 U.S.C.A. § 2000e–5(g), which provides in pertinent part:

> "If the court finds that the respondent has intentionally engaged in . . . an unlawful employment practice . . . the court may . . . order such affirmative action as may be appropriate . . ."

Both parties agree that the quoted language is broad enough to authorize a court to assess money damages in those cases where a finding is made that an employer has intentionally engaged in an unlawful employment practice. The principal areas of dispute between the parties are (1) whether Raytheon intentionally engaged in an unlawful employment practice or, on the contrary, did it rely in good faith on provisions of Massachusetts law which directly contradict the federal law (which provisions of Massachusetts law were ruled to be unconstitutional in an earlier opinion of this court reported at 323 F.Supp. 391); (2) who has the burden of proof on the issue of good faith reliance; and (3) may Raytheon be held liable for money damages even if there was good faith reliance by it on the state law.

On the basis of the evidence adduced at the two hearings mentioned above, I find that Mr. Hennemuth as director of industrial relations for Raytheon is the person who made the actual decisions as to Raytheon's employment policy with regard to the hours to be worked by female employees, the extent of overtime which females could work, and various matters going to promotion and other aspects of the employment conditions of female employees. I find that at all material times Mr. Hennemuth made his decisions in reliance on the advice of counsel for Raytheon and in reliance on information which had been brought to his attention as to the position of the state authorities relative to state en-

**338**

forcement of state law. I further find that the time period in which plaintiffs seek to recover damages begins with the effective date of the statute which underlies this case, July 2, 1965, through October 15, 1970.

■ For purposes of this case I rule that good faith reliance on contrary provisions of state law is an affirmative defense as to which the burden of proof must be sustained by the defendant Raytheon.

I find that during the time period involved, Raytheon, acting through its industrial relations department and its legal department, kept itself fully aware of the provisions of both state and federal law and labor departments, and that Raytheon sought to and did obtain exemption from the state maximum hour laws for its clerical female employees. Although not documented, I find, on the basis of the testimony of Mr. Grady, who has been employed by the state division of industrial safety for 26 years, and is now Director, Division of Industrial Safety, Commonwealth of Massachusetts, that Raytheon also sought from the state authorities exemption from the maximum hour laws for its female production employees. Mr. Grady testified that the state statute which forbade females working in excess of stated maximum hours was "enforced to the letter," prior to a ruling by the Attorney General of the Commonwealth of Massachusetts in an opinion released on September 30, 1970, which opinion declared the state law to be unenforceable from that date on. Mr. Grady further testified that all requests by Raytheon made during the year 1969 for exemption of female production employees were refused and that the refusals were so numerous in 1969 that "they [Raytheon] probably got the message." This explains why no requests were made in 1970. Mr. Grady's testimony was corroborated by that of Mr. Hennemuth who said that he feared prosecution by the state Labor Department if he did not comply with state limitations on women's work hours. I find that Raytheon sought exemptions for its female production employees from the state authorities until Raytheon had a reasonable basis to believe that any further requests would be futile because of the consistent denial of previous requests.

It should be noted herein that the Equal Employment Opportunity Commission (EEOC), the federal agency charged with the enforcement of the federal statute, initially took the position (30 Fed.Reg. 14926, Dec. 2, 1965) that state laws which had been enacted for the "protection" of females were not preempted by the federal law. The position of the EEOC was not changed until August 19, 1969, at which time the federal agency in effect reversed its position and stated that state "protective legislation" which ran counter to the federal law should no longer be obeyed by employers of female employees who are engaged in interstate commerce (34 Fed.Reg. 13367, Aug. 19, 1969).

Finally, it should be noted that Raytheon terminated its compliance with the state laws immediately upon the Attorney General's ruling of September 30, 1970 to the effect that the state law was invalid.

■ On the basis of the foregoing, I rule that Raytheon has sustained its burden of proving that it did not intentionally engage in an unlawful employment practice within the meaning of 42 U.S.C.A. 2000e–5(g), and on the basis of the opinions set out in Ridinger v. General Motors, 325 F.Supp. 1089 (S.D. Ohio, 1971), and Kober v. Westinghouse Electric, 325 F.Supp. 467 (W.D.Pa., 1971), I rule that plaintiffs are not entitled to recover money damages in Count 2 of the complaint.

I further rule that plaintiffs' contention that even though there was good faith reliance by Raytheon on the state law, plaintiffs nevertheless are entitled to recover damages, is without legal merit, nor is it supported by legal authority.

Accordingly, the motion for determination of plaintiffs' entitlement to money damages on Count 2 is decided adversely to plaintiffs, who may not recover money damages in this case on the basis of the allegations contained in Count 2.